QUINN EMANUEL URQUHART & SULLIVAN, LLP
Ryan S. Goldstein (Bar No. 208444)
ryangoldstein@quinnemanuel.com
Jeffrey J. Ung (Bar No. 286374) (*pro hac vice*)
jeffreyung@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorney for Defendant Canon U.S.A., Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CELLSPIN SOFT, INC., | CASE NO. 3:17-CV-05938-YGR |
| Plaintiff, | **DEFENDANT CANON U.S.A., INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** |
| v. | |
| CANON U.S.A., INC., | Date:   May 29, 2018 |
| Defendant. | Time:   2:00 p.m. |
| | Dept.:   Courtroom 1, 4th Floor |
| | Judge:   Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

NOTICE OF MOTION AND MOTION ........................................................................................1

STATEMENT OF THE ISSUE TO BE DECIDED .....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ..........................................2

II.     STATEMENT OF THE FACTS ..........................................................................................3

        A.      The Procedural History ..........................................................................................3

        B.      The March 6, 2018 Hearing on the Omnibus Section 101 Motion .........................4

        C.      The Court's Order Invalidating the Asserted Patent ...............................................8

III.    RELEVANT LEGAL STANDARDS....................................................................................9

        A.      *Octane Fitness* Set the Standard for an "Exceptional" Case.................................9

IV.     ARGUMENT. ........................................................................................................................9

        A.      The Substantive Strength of Cellspin's Position Was Exceptionally Weak .............9

                1.      Cellspin ignored the plethora of cases from the Federal Circuit holding similar claims patent-ineligible ........................................................12

                2.      Cellspin advanced meritless arguments that were not grounded in fact ........................................................................................................................14

                3.      Canon is entitled to an award of attorneys' fees defending a meritless case ........................................................................................................15

V.      CONCLUSION. ...................................................................................................................16

1

## **TABLE OF AUTHORITIES**

2

**Page**

**Cases**

*Aatrix Software, Inv. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................................. 4, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ........................................................... 3, 8, 10, 11, 13

*Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) .......................................................................... 11

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) .......................................................................... 13

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ...................................................................... 4, 14

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015) ..................................................................................... 15

*Content Extraction and Transmission LLC v. Wells Fargo Bank, National Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) .......................................................................... 13

*Diamond v. Diehr*,
   450 U.S. 175 (1981) .......................................................................................... 11

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
   689 F. App'x 969 (Fed. Cir. 2017) ..................................................................... 13

*eDekka LLC v. 3Balls.com, Inc.*,
   No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).......................... 9

*Elec. Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .......................................................................... 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ............................................................. 4, 8, 13, 14

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016) .......................................................................... 12

*Intellectual Ventures I LLC v. Capital One Bank, (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................................ 8

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) .......................................................................... 12

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017) .................................................. 1, 2, 9, 10, 13, 16

*McRO v. Bandai*,
   837 F.3d 1299 (Fed. Cir. 2016) ...................................................................... 4, 13

*My Health, Inc. v. ALR Techs., Inc.*,
   No. 216CV00535RWSRSP, 2017 WL 6512221 (E.D. Tex. Dec. 19, 2017)........ 9, 13

*MySpace, Inc. v. GraphOn Corp.*,
   672 F.3d 1250 (Fed. Cir. 2012) ............................................................................ 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ................................................................................. 2, 9, 15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ....................................................................... 8, 13

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*,
   858 F.3d 1383 (Fed. Cir. 2017) .......................................................................... 15

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ............................................................................ 12

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) .......................................................................... 10

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ........................................................................ 8, 12

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC,*
   874 F.3d 1329 (Fed. Cir. 2017) ............................................................................................. 12
*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................................... 11
*West View Research, LLC v. Audi AG,*
   685 F. App'x 923 (Fed. Cir. 2017) ........................................................................................ 13

**Statutory Authorities**
35 U.S.C. § 101 ............................................................................. 1, 2, 3, 9, 10, 12, 13, 14, 15
35 U.S.C. § 285 .................................................................................................... 1, 2, 9, 13

**Rules and Regulations**
Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

**Additional Authorities**
U.S. Patent No. 9,258,698 .......................................................................................................... 3

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on May 29, 2018, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-titled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendant Canon U.S.A., Inc. will and hereby does move the Court to find that this case is "exceptional" under 35 U.S.C. § 285 and award Canon its reasonable attorneys' fees.

Based on the objective ineligibility of Cellspin's patent claims and the exceptional weakness of Cellspin's defense of its 35 U.S.C. § 101 position, Canon is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (concluding "that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future").

The points and authorities in support of this motion are set forth in Canon's accompanying Memorandum of Points and Authorities. Canon's motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jeffrey Ung ("Ung Decl.") and attached exhibits, the pleadings and papers on file, and any evidence and argument presented to the Court at the hearing.

For the foregoing reasons, Canon respectfully requests that the Court grant its motion finding this case exceptional and awarding Canon its reasonable attorneys' fees.

## STATEMENT OF THE ISSUE TO BE DECIDED

An exceptional case under § 285 is one that simply stands out from others with respect to the substantive strength of a party's litigating position. Cellspin's asserted patent claims were objectively ineligible under current § 101 jurisprudence, and its arguments in defense of the eligibility of the claims were meritless. Should the Court therefore find this case to be exceptional and award Canon its attorneys' fees?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT

Canon is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees because Cellspin's asserted patent claims were objectively ineligible under § 101, and its positions were exceptionally weak. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (concluding "that the district court acted within the scope of its discretion in finding this case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future"). By the time Cellspin filed its Complaint, there was clear guidance from the Federal Circuit regarding claims in this category that should have given any litigant a reasonably clear view of § 101's boundaries. Cellspin ignored this precedent by filing its Complaint and advancing meritless arguments that found no support in law or fact.

Moreover, Cellspin knew that for its claims to survive § 101 scrutiny, they would need to contain a specific improvement to computer technology. Cellspin also knew that no such improvement existed in its patent's claims, but rather than concede the issue, Cellspin filed an amended complaint and identified improvements that it contended were covered by the claims. The claims, however, did not include these improvements and neither did the patent's specification. Undeterred, Cellspin gave the Court citations to the specification that purportedly supported these positions, but the Court saw right through them, noting that it appeared as if Cellspin "pulled them out of thin air." And it had. Knowing it needed to find specific improvements somewhere if it wanted to prolong the litigation, Cellspin simply made them up.

Cellspin should not be allowed to simply walk away after Canon has had to incur significant fees in defending itself against an infringement suit that should never have been filed. This case certainly "stands out from others." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014). Accordingly, for the reasons detailed below, Canon respectfully requests that the Court grant its motion, find this case exceptional, and award Canon its attorneys' fees.

## II.      STATEMENT OF THE FACTS

### A.      The Procedural History

On October 16, 2017, Cellspin filed its Complaint,[1] alleging that Canon infringes U.S. Patent No. 9,258,698 (the "Asserted Patent").  *See* Dkt. No. 1 at ¶ 1.

On January 16, 2018, Canon[2] moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint because the claims of the Asserted Patent are directed to patent-ineligible subject matter under § 101 ("Omnibus Section 101 Motion"). Dkt. No. 30. In the motion, Canon argued that the claims (i) are directed to the abstract concept of acquiring data using a "data capture device," transferring data over a connection to a mobile device, and publishing the data to a website, and (ii) recite only generic computer technology to carry out the abstract idea, technology which the specification describes as "pervasive [and] flexible," such as a "ubiquitous mobile phone," "fairly widespread" personal digital assistants (PDAs), and "general purpose computers and computing devices." *Id.* at 1-19.

On January 30, 2018, the day after the initial Case Management Conference in this case,[3] Cellspin filed an amended complaint. Dkt. No. 34. Cellspin also filed an opposition to the Omnibus Section 101 Motion. Dkt. No. 36. In its opposition, Cellspin argued that the claims of the Asserted Patent are not abstract under step one of the *Alice* test because the claims describe "'specific improvements' comprising acquiring, transferring, and publishing new-data on the Internet," including, for example, a purported improvement in battery consumption, *id.* at 15, an elimination of the need for "bulky" hardware, *id.* at 8, and a purported improvement in the order or

---

[1] This case is one of more than a dozen lawsuits filed by Cellspin alleging infringement of several patents in a related family. *See* Dkt. No. 18 (Cellspin's Notice of Procedural Posture of Related Cases).

[2] Canon filed an omnibus motion to dismiss with defendants NIKE, Inc., Fitbit, Inc., Moov, Inc. d/b/a/ Moov Fitness Inc., TomTom, Inc., GoPro, Inc., Fossil Group, Inc., Misfit Inc., Panasonic Corporation of North America, and JK Imaging Ltd.

[3] Cellspin filed its amended complaint the day after the conference, but it did not raise the issue of amending its complaint during the conference, leading the Court to issue an order requiring Cellspin to provide a written explanation as to why it did not do so. Dkt. No. 37. On February 5, 2018, Cellspin responded to the Court's order, Dkt. No. 42.  The parties stipulated that Cellspin's amended complaint had no impact on the briefing schedule for the Omnibus Section 101 Motion, Dkt. No. 41.

timing of the Bluetooth or wireless pairing, *id.* at 10. In making these arguments, Cellspin failed to cite any credible support in the Asserted Patent, and the citations it did provide were irrelevant. *See, e.g., id.* at 15 ("This saves a tremendous amount of power. *See* '794 at 4:66-5:1 ('A file event listener *in the client application* 203 listens for the signal from the digital data capture device 201.' (emphasis added)[)]"). Cellspin's failings are simply explained: these "improvements" were not described by the named inventors in the Asserted Patent when they applied for the patent. Nonetheless, Cellspin analogized its claims to those found eligible in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *McRO v. Bandai*, 837 F.3d 1299 (Fed. Cir. 2016). *Id.* at 17-19. Cellspin also advanced irrelevant arguments concerning the novelty and non-obviousness of its patent. *Id.* at 6-11. The Omnibus Section 101 Motion was fully briefed on February 13, 2018. Dkt. No. 46.

On February 16, 2018, Cellspin filed a notice of supplementary authority in which it argued that the Federal Circuit's decisions in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) and *Aatrix Software, Inv. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) "are relevant to this case" because "factual disputes exist" regarding whether "the claimed features are well-understood, routine, and conventional." Dkt. No. 47.

On March 2, 2018—nearly two months after the Omnibus Section 101 Motion was filed, 17 days after briefing on the Omnibus Section 101 Motion was completed, and just two court days before the hearing on Omnibus Section 101 Motion—Cellspin filed a second amended complaint. The second amended complaint included a new section entitled "The Patent-in-Suit" (Dkt. No. 55, ¶¶ 9-23), which imported nearly verbatim many of the attorney arguments in Cellspin's opposition to the Omnibus Section 101 Motion.

**B.      The March 6, 2018 Hearing on the Omnibus Section 101 Motion**

At the March 6, 2018 hearing on the Omnibus Section 101 Motion, Cellspin advanced several meritless arguments in support of its claims. But Cellspin could not articulate why its claims are not directed to the abstract idea of acquiring, transferring, and publishing data and multimedia content on one or more websites:

1    **THE COURT**: TO MAKE AN AFFIRMATIVE CASE. THIS IS YOUR
LAST OPPORTUNITY TO MAKE AN AFFIRMATIVE CASE AS TO WHY IT
2    IS NOT ABSTRACT. AFFIRMATIVELY.

3    **MR. EDMONDS**: WHEN THE COURT LOOKS TO THE --

4    **THE COURT**: NO, DON'T START WITH WHAT I DO. WHAT I WANT
YOU TO START WITH IS THIS PATENT IS NOT ABSTRACT BECAUSE.
5    FINISH MY SENTENCE.

6    **MR. EDMONDS**: THE CLAIMS ARE NOT ABSTRACT BECAUSE
THEY DO NOT PREEMPT ALL MEANS TO THE END THAT YOU CAN
7    DISTILL FROM THE CLAIMS.

8    **THE COURT**: WHAT CAN YOU DISTILL?

9    **MR. EDMONDS**: WHAT I HAD ON SLIDE 6 IS WE SAY ANY
DISTILLATION OF THE CLAIM, YOUR HONOR, WOULD NEED TO
10   RECOGNIZE --

11   **THE COURT**: TELL ME WHAT IT IS. TELL ME WHAT THE PATENT
DOES.
12
**MR. EDMONDS**: RIGHT. THE DISTILLATION -- WHEN YOU SAY
13   "THE PATENT", IT'S THE CLAIMS. AND THE DISTILLATION OF' THE
CLAIMS, WHICH IS IN SLIDE 6 AND I'VE STATED IN THE RECORD, THAT
14   WOULD BE A PROPER DISTILLATION OF THE CLAIMS. AND IT WOULD
BE FOR THE COURT TO DECIDE WHETHER THAT DISTILLATION IS
15   ABSTRACT. IF SO, YOU DON'T MOVE TO 2. WE SAY IT'S NOT
ABSTRACT. WE SAY WHAT YOU DO IS YOU LOOK AT FIRST OF ALL --
16
**THE COURT**: STOP.
17

18   Ex. A attached to Ung Decl. (3/6/2018 Hrg. Transcript) at 22.

19       Nor could it explain the teachings of its patent:

20
**THE COURT**: I HAVE YET TO HAVE YOU, AS A LAWYER,
21   ARTICULATE IN ANY SYNTHESIZED WAY WHAT IT TEACHES.

22       THAT'S WHAT PATENTS ARE SUPPOSED TO DO; THEY ARE
SUPPOSED TO TEACH SOMETHING.
23
**MR. EDMONDS**: IT TEACHES METHODS, SYSTEMS,
24   APPARATUSES, AND COMPUTER REMOVABLE MEDIA THAT COMPRISE
WHAT WE HAVE DISTILLED AS THIS -- A SPECIFIC TYPE OF
25   PUBLISHING OF NEWLY CAPTURED DATA, NOT JUST THE STEPS,
WHAT IS SAID IS CAPTURING PUBLISHING, AS THE DEFENDANTS SAY,
26   ALL THESE INVENTIVE ELEMENTS THAT ARE DISTILLED HERE HAVE
TO BE LOOKED AT TOGETHER.
27

28

1
2

    SO FROM THE PERSPECTIVE OF THE CAPTURE DEVICE, THE CAPTURE DEVICE EITHER PROVIDES EVENT NOTIFICATION OVER A PAIRED BLUE TOOTH --

3
4

    **THE COURT**: HOW DOES IT DO THAT? HOW DOES IT TEACH IT TO DO THAT?

5
6

    **MR. EDMONDS**: WELL, THE SPECIFICATION -- I MEAN WE ARE TALKING ABOUT WHAT THE CLAIM IS. THE SPECIFICATION HAS EXAMPLES THAT TEACH ONE OF ORDINARY SKILL IN THE ART HOW TO DO THAT.

7

    **THE COURT**: HOW DOES IT DO IT?

8

    **MR. EDMONDS**: WELL, IT HAS EXAMPLES IN THE CLAIMS --

9

    **THE COURT**: HOW DOES IT DO IT? DO YOU KNOW OR NOT?

10

    **MR. EDMONDS**: I... I... I DO KNOW, YOUR HONOR.

11

    **THE COURT**: ALL RIGHT. HOW?

12
13
14

    **MR. EDMONDS**: WELL, THE -- IT PROVIDES, FOR EXAMPLE, AN EVENT NOTIFICATION TO THE MOBILE DEVICE. THE MOBILE DEVICE OVER A... OVER A PAIRED CONNECTION, WHICH WAS NOT DONE BEFORE AND WHICH IS UNCONVENTIONAL, SO A CONNECTION IS PAIRED IN THE FIRST INSTANCE –

15
16
17

    **THE COURT**: YOU HAVE A CAPTURE DEVICE AND YOU HAVE A BLUE TOOTH CONNECTION, AND ALL OF A SUDDEN YOU'RE SAYING THAT THIS PATENT TEACHES THOSE DEVICES HOW TO COMMUNICATE AND CREATE AN EVENT NOTIFICATION.

18
19

    **MR. EDMONDS**: WHAT IT DOES IS, IT TEACHES SPECIFIC IMPROVED WAYS TO ACHIEVE THE ENDS THAT ARE BEING SOUGHT HERE. THAT'S WHAT IT TEACHES. SO WHEN --

20

    **THE COURT**: LIKE WHAT?

21
22
23

    **MR. EDMONDS**: THE IMPROVED WAY -- SO WHAT WE DO IS, TO GET THERE, WHAT THE COURT SHOULD DO IS WE LOOK AT THE PRIOR ART THAT'S STATED IN THE SPECIFICATION, THE CLUNKY METHODS. WE LOOK AT THE PRIOR ART KENNEDY METHOD, WHICH IS THE INFERIOR METHOD. WE LOOK AT OTHER INFERIOR METHODS THAT ARE NOTED IN OUR BRIEF.

24
25
26

    THEN WE SAY WHAT DOES -- DOES THE -- DOES DISTILLATION OF THE CLAIM, DOES IT COVER ALL MEANS FOR ACHIEVING THIS END OF UPLOADING DATA FROM AN INTERNET INCAPABLE CAPTURE DEVICE TO THE INTERNET. IT DOES NOT. IT COVERS SPECIFIC IMPROVEMENTS TO THIS TECHNOLOGY –

27
28

    **THE COURT**: YOU KNOW, YOU USE A LOT OF WORDS AND DON'T SAY MUCH IN TERMS OF SPECIFICS.

1   *Id.* at 28-30.

2          Nor could Cellspin identify where in the specification and claims any purported

3   "improvement" was disclosed (because they were not there). Instead, Cellspin directed the Court

4   to its opposition to the Omnibus Section 101 Motion and the new allegations in its second

5   amended complaint:

6

7          **THE COURT**: WHERE IS ISSUES LIKE POWER, STORAGE,
           PROCESSING, BANDWIDTH, THAT IS THE USE OF RESOURCES, WHERE
           IS ANY OF THAT?

8

9          **MR. EDMONDS**: WE HAVE CITED -- WE HAVE CITED IN OUR
           SPECIFICATION -- IN OUR BRIEF FROM THE SPECIFICATION WHERE IT
           TALKS ABOUT BATTERY SAVINGS, SPECIFICALLY TALKS ABOUT
10         THAT IN THE PATENT.

11         BUT IN TERMS OF LEVERAGING THE INTERNET CAPABILITY
           AND THE CAPABILITIES, ALL OF THE DIFFERENT -- THE MANY
12         CAPABILITIES OF AN INTERMEDIATE MOBILE DEVICE, BATTERY
           CAPACITY, STORAGE CAPACITY, PROCESSING SPEED, PROCESSING
13         POWER, THE USER INTERFACE, ALL OF THESE ELEMENTS ARE NOTED
           IN THE DESCRIPTIONS OF THESE THINGS.

14

15         **THE COURT**: SO YOU ARE STANDING ON YOUR BRIEFS IN
           TERMS OF WHERE YOU THINK YOU'VE IDENTIFIED IT, AND IF IT'S NOT
           IN YOUR BRIEF, THEN IT'S NOT THERE?

16

17         **MR. EDMONDS**: WHAT I WOULD SAY, I WOULD ALSO DIRECT
           THE COURT TO THE COMPLAINT AND ESPECIALLY IN VIEW OF THE
           VERY RECENT CASE LAW, INCLUDING THE AATRIX CASE, AATRIX
18         SOFTWARE CASE.

19         **THE COURT**: WHICH COMPLAINT?

20         **MR. EDMONDS**: THE AMENDED COMPLAINT.

21   *Id.* at 40-41. The Court, however, correctly recognized there was no factual basis for Cellspin's

22   purported improvements: "It seems to me that you have pulled them out of thin air." *Id.* at 39.

23          And Cellspin was not done raising irrelevant or meritless arguments even after the hearing.

24   Eight days after the defendants filed a supplemental brief to address Cellspin's second amended

25   complaint, as the Court requested, Cellspin filed an additional brief without seeking prior Court

26   approval, in violation of the Court's local rules. *See* Dkt. No. 67. The Court issued a show cause

27   order as to why Cellspin should not be sanctioned for its failure to follow court rules, an order the

28   Court eventually vacated when it issued its final ruling on the Omnibus Section 101 Motion.

C.      The Court's Order Invalidating the Asserted Patent

In its April 3, 2018 Order, the Court granted the Omnibus Section 101 Motion, finding the asserted claims of the Asserted Patent to be patent-ineligible. Dkt. No. 73 at 1-19. In its *Alice* step one analysis, the Court rejected Cellspin's argument that the Asserted Patent describes "specific improvements" in acquiring, transferring, and publishing data on the Internet, stating that "plaintiff fails to identify these alleged 'specific improvements' or otherwise explain how these improvements result in enhanced 'computer capabilities' rather than 'a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 12 (quoting *Enfish*, 822 F.3d at 1339 (some internal quotations omitted). The Court likened Cellspin's claims to those in *TLI*, concluding that Cellspin's claims "do not recite a specific improvement with regard to 'how to combine a camera with a cellular telephone [or] how to transmit images via a cellular network.'" *Id.* (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)).

In its *Alice* step two analysis, the Court found that "the asserted claims 'merely provide a generic environment in which to carry out' the abstract ideas of acquiring, transferring, and publishing data," and thus "fail to supply an inventive concept sufficient to transform the underlying abstract idea into patentable subject matter." *Id.* at 15 (quoting *TLI*, 823 F.3d at 611). The Court noted that only one of the several "benefits" described by Cellspin in its opposition— "namely efficiencies for achieving 'the same or similar ends of uploading content' as the conventional method"—found support in the specification. *Id.* at 16. But the Court noted that "utiliz[ing] known and conventional computer components to achieve an improvement in the efficiency or speed of a previously-manual process does not constitute a sufficient inventive concept." *Id.* at 16 (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1267 (Fed. Cir. 2012)). The Court found that "[t]he other proffered benefits which relate to improved battery consumption and power savings; order or timing of the Bluetooth wireless pairing; and elimination of the need for bulky hardware and costly cell phone services; do not appear in the patent's specification." *Id.* Finally,

the Court found that the allegations in Cellspin's second amended complaint either failed to cite to support in the specification or cited irrelevant passages. *Id*. at 17.

On April 10, 2018, the Court entered judgment in favor of Canon as the prevailing party. Dkt. No. 75.

## III.    RELEVANT LEGAL STANDARDS.

### A.    *Octane Fitness* Set the Standard for an "Exceptional" Case

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

The facts here implicate all of the "nonexclusive" factors relevant to § 285 suggested by the Supreme Court in *Octane Fitness*, including "meritlessness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756, n.6. Canon need only demonstrate that this case is exceptional by a preponderance of the evidence, but the facts presented here exceed that standard. *Id*. at 1758.

## IV.    ARGUMENT.

### A.    The Substantive Strength of Cellspin's Position Was Exceptionally Weak

This meritless case "stands out" from others because no reasonable litigant could reasonably expect success on the merits of Cellspin's § 101 position given the governing law and the facts in this case. Other courts have awarded attorneys' fees when a patentee advanced meritless § 101 arguments like those advanced by Cellspin here. *See, e.g., Inventor Holdings*, 876 F.3d at 1377-80; *My Health, Inc. v. ALR Techs., Inc.*, No. 216CV00535RWSRSP, 2017 WL 6512221, at *1 (E.D. Tex. Dec. 19, 2017); *eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015).

For example, in *Inventor Holdings*, in affirming the district court award of attorneys' fees, the Federal Circuit concluded that the district court "acted within the scope of its discretion in finding [the] case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1377. After concluding that the claims at issue were "manifestly directed to an abstract idea," the Federal Circuit went on to state, "[T]he only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional.'" *Id*. at 1378. The Federal Circuit noted that "while we agree with [plaintiff] as a general matter that it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo*, there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the [asserted] patent's claims are ineligible" because the "patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system." *Id*. at 1379.

Like the claims in *Inventor Holdings*, "there is no uncertainty or difficulty in applying the principles set out in *Alice*" and the long line of Federal Circuit precedents holding claims like Cellspin's patent-ineligible. *See id.* Although these claims are not directed to an economic practice, like those in *Inventor Holdings*, the claimed process—uploading data from a device to a website—is similarly conventional and well-known prior to the applicants' filing of the patent, as they concede in their specification. *See, e.g.*, '794 patent at 2:16-18 (types of digital capture devices); *id.* at 3:43-46 (examples of Bluetooth communication devices); *id.* at 4:38-44 (a variety of ways the data can be transferred); *id.* at 9:40-46 (alternatives to Bluetooth). Despite this, Cellspin advanced arguments that were not grounded in law or fact to prolong the inescapable conclusion that its patent is invalid, while Canon continued to incur fees to defend itself against claims that should never have been filed in the first place. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims . . . .").

It is also important to note that in cases that courts have found exceptional due to a plaintiff's objectively ineligible patent claims or meritless positions on § 101, the courts have not

been affected by the presumption of validity that exists for patents. This is because the presumption of validity applies to *validity* issues, not to *eligibility* issues. *See Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016). Validity and eligibility are two separate inquiries. *Id.* ("To be clear: ruling these claims to be patent-eligible does not mean that they are valid; they have yet to be tested under the statutory conditions for patentability, e.g., §§ 102 (novelty) and 103 (non-obvious subject matter), and the requirements of § 112 (written description and enablement) . . . ." (emphasis added)). In other words, to be valid, a patent must, *inter alia*, satisfy the requirements of §§ 102, 103, and 112. *Id.* The eligibility inquiry, however, focuses on whether the patent is directed to eligible subject matter. Therefore, claims may be patent-eligible while still being invalid for failing one of the statutory conditions for patentability, just as claims that may be valid under the validity sections may be directed to (and claim) patent-ineligible subject matter. Indeed, the Supreme Court has underlined the difference between validity and eligibility:

> Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. ***The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls in a category of statutory subject matter.***

*Diamond v. Diehr*, 450 U.S. 175, 189-90 (1981) (emphasis added) (quotation, internal citation omitted). Patents are not presumed eligible. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (citation omitted). Moreover, even if Cellspin were entitled to a presumption of eligibility on its patent, that presumption can be—and in this case, was—overcome. Cellspin was nonetheless required to at least put forth reasonable arguments in support of its position of eligibility, but it failed to do so on several occasions.

Based on the totality of circumstances, Canon is entitled to an award of its attorneys' fees for defending this meritless case.

1.     **Cellspin ignored the plethora of cases from the Federal Circuit holding similar claims patent-ineligible**

It is difficult to conceive of computer activity more conventional than acquiring, transferring, and publishing data. A cursory review of the law on § 101 should have revealed to Cellspin that the claims of the Asserted Patent are directed to an abstract idea and that their claim elements are not patent eligible:

- A device used for recording a digital image, transferring the digital image from the recording device to a storage device, and administering the digital image in the storage device "claims no more than the abstract idea of classifying and storing digital images in an organized manner" and is thus patent-ineligible, *In re TLI Comm'cns,* 823 F.3d at 609;

- Systems and methods for performing real-time monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results "do not go beyond requiring the collection, analysis, and display of available information in a particular field" and are thus patent-ineligible, *Elec. Power Group , LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016);

- A method claiming the functional results of converting, routing, controlling, monitoring, and accumulating records "manipulates data but fails to do so in a non-abstract way" and is thus patent-ineligible, *Two-Way Media Ltd. v. Comcast Cable Comm'cns, LLC*, 874 F.3d 1329, 1337-39 (Fed. Cir. 2017);

- Claims directed to collecting and analyzing information to detect misuse, and notifying a user when misuse is detected patent-ineligible, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-95 (Fed. Cir. 2016);

- Claims directed to transmitting information about a mail object over a network using a personalized marking patent-ineligible, *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 907-08 (Fed. Cir. 2017);

- Claims "directed to . . . collecting, displaying, and manipulating data" that recite generic computer components that "merely describe the functions of the abstract idea itself" are patent-ineligible. *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017);

- Claims that merely collect information, analyze it, and display certain results of the collection and analysis are directed to a patent-ineligible concept. *West View Research, LLC v. Audi AG*, 685 F. App'x 923, 926

1      (Fed. Cir. 2017);

2      • Claims that "merely recite the familiar concepts of receiving,
        authenticating, and publishing data" executed with "computer technology"
3        are patent-ineligible. *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F.
        App'x 969, 971 (Fed. Cir. 2017); and
4

5      • Claims for collecting data, recognizing certain data within the collected
        set, and storing that data "undisputedly well-known" are patent-ineligible,
6        *Content Extraction and Transmission LLC v. Wells Fargo Bank, National
        Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).
7

8          It should have been clear to Cellspin from this body of law that the claims of the Asserted

9   Patent were "manifestly directed to an abstract idea" and thus patent-ineligible. *See Inventor*

10  *Holdings*, 876 F.3d at 1378. Cellspin ignored these cases and instead attempted to analogize its

11  claims to those in *Enfish* and *McRO*, which were directed to "specific improvements" in computer

12  capabilities. Dkt. No. 36 at 17-19. But, as the Court found in granting the Omnibus Section 101

13  Motion (Dkt. No. 73 at 13), the sole advance claimed in the Asserted Patent is simply automating

14  the process of uploading data to a website, and the law is clear that using generic computing

15  technology to automate a process and save time or increase efficiencies is not an inventive step

16  that can confer patentability. *OIP Techs.*, 788 F.3d at 1363 (Fed. Cir. 2015) ("relying on a

17  computer to perform routine tasks more quickly or accurately is insufficient to render a patent

18  claim eligible"); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014)

19  ("use of a computer to create electronic records, track multiple transactions, and issue

20  simultaneous instructions" is not an inventive concept); *Bancorp Servs., L.L.C. v. Sun Life Assur.*

21  *Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (a computer "employed only for its most

22  basic function . . . does not impose meaningful limits on the scope of those claims").

23         This case is exceptional under § 285 because, under any objectively reasonable assessment,

24  Cellspin should have known that its claims were patent-ineligible in view of the above cases and

25  its claims' "stark contrast" to those in *Enfish* and *McRO. See My Health*, 2017 WL 6512221, at *4

26  (finding case exceptional in part due to the weakness of plaintiff's § 101 position in light of "[t]he

27  numerous cases invalidating claims directed to information collection and analysis" and the

28

-13-

1  asserted claims' "stark contrast" to the "handful of cases" like *Enfish*, which found a specific

2  improvement to the way computers operate).

3           **2.      Cellspin advanced meritless arguments that were not grounded in fact**

4           Faced with the law indicating the ineligibility of its claims, Cellspin turned then to relying

5  on *Berkhemer* and *Aatrix*, amending its complaint for the second time to include numerous

6  allegations that it hoped would avoid dismissal of its claims under § 101. But Cellspin already had

7  several opportunities, including in its opposition papers, complaint, and amended complaint, and

8  at the hearing on the Omnibus Section 101 Motion, to identify exactly what the Asserted Patent's

9  alleged inventions are and list its meaningful limitations—it failed to do so. Cellspin's conclusory

10 allegations that its patent is directed to specific improvements or disclose an inventive concept

11 were not grounded in fact. Indeed, at the hearing on the Omnibus Section 101 Motion, Cellspin

12 could not even articulate why its claims are not directed to the abstract idea of acquiring,

13 transferring, and publishing data and multimedia content on one or more websites, could not

14 explain the teachings of its patent, and could not identify where in the specification and claims any

15 purported "improvement" was disclosed. Ex. A attached to Ung Decl. (3/6/2018 Hrg. Transcript at

16 22, 28-30, 40-41). It relied entirely on general and vague statements about how the claims should

17 be "distilled" and how there were improvements in the claims, but it did not—and could not—

18 point to any particular place in the asserted claims (or, largely, even the specification) to support

19 its contentions.

20         Unsurprisingly, Cellspin's statements and conclusions in its opposition and second

21 amended complaint about the alleged invention's benefits of reduced power consumption through

22 a "low power state," improved battery life, and reduced cost did not even cite support from the

23 Asserted Patent, because there is none. *See* Dkt. No. 73 at 18 ("Again, the alleged technological

24 improvements appear nowhere in the claims or specification and plaintiff fails to explain how such

25 benefits otherwise 'flow from' the patent."). Where Cellspin did provide citations to the Asserted

26 Patent, the citations only underscored that its allegations were completely divorced from what is

27 actually disclosed in Cellspin's patent and the asserted claims. *Id.* at 17 ("However, the cited

28

section of the '794 Patent does not reference power usage or battery savings, much less support plaintiff's allegation of improvements to the same.").

It is bad enough that its claims were objectively ineligible, but Cellspin then "pulled [arguments] out of thin air" in an attempt to support its meritless positions. Its conclusory and unsupported statements demonstrate the exceptional weakness of Cellspin's § 101 position and further support a finding of an exceptional case. *See Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (reversing denial of attorneys' fees based in part on plaintiff's counsel's and founder's conclusory and unsupported statements concerning the validity of the asserted patent).

### 3. Canon is entitled to an award of attorneys' fees defending a meritless case

The Asserted Patent is patent-ineligible on its face. Cellspin should never have filed this lawsuit in the first place, as it should have recognized the § 101 issues with its claims considering both the governing law and the facts in this case. Under any objectively reasonable assessment of Supreme Court and Federal Circuit precedents, Cellspin's patent is manifestly directed to an abstract idea and ineligible under § 101. Yet Cellspin pursued its case anyway, wasting the Court's and the parties' time and resources. The Supreme Court has commented that district courts have a responsibility to dissuade meritless cases:

> Nonetheless, it is still necessary and proper to stress that district courts have the authority and responsibility to ensure meritless cases are dissuaded. If meritless cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. It is also within the district court's discretion to award attorney's fees to prevailing parties in "exceptional cases."

*Commil USA, LLC v. Cisco Sys., Inc*., 135 S. Ct. 1920, 1930-31 (2015) (citations omitted). This is such a case.

Based on the meritless nature of Cellspin's claims and the lack of merit in its arguments in support of those claims, this case "stands out" from others and is thus "exceptional" under the *Octane* framework. *See Octane Fitness*, 134 S. Ct. at 1757 (noting that a case could be exceptional if there exists "subjective bad faith" or "exceptionally meritless claims," but not necessarily both).

1   Cellspin's filing of this case and pursuit of litigation in the face of clear evidence that it could not

2   prevail forced Canon to unnecessarily incur attorneys' fees and the Court to unnecessarily devote

3   time and attention to meritless claims. The Court should therefore award Canon its attorneys' fees

4   "to deter future 'wasteful litigation' on similarly weak arguments." *See Inventor Holdings*, 876

5   F.3d at 1377-78.

6   **V.      CONCLUSION.**

7          For the foregoing reasons, Canon respectfully requests that this Court grant its Motion,

8   find this case exceptional, and award Canon its attorneys' fees in the sum of $213,721.50 plus

9   additional attorneys' fees accrued after March 2018 related to this litigation.  Ung Decl., at ¶¶ 4-7.

10

11  DATED:  April 24, 2018                    QUINN EMANUEL URQUHART & SULLIVAN,
                                              LLP
12

13                                   By  */s/ Jeffrey J. Ung*
                                              Jeffrey J. Ung
14
                                         QUINN EMANUEL URQUHART &
15                                       SULLIVAN, LLP
                                         jeffreyung@quinnemanuel.com
16                                       Ryan S. Goldstein
                                         ryangoldstein@quinnemanuel.com
17                                       865 S. Figueroa St., 10th Floor
                                         Los Angeles, CA 90017
18                                       Telephone: (213) 443-3000
                                         Facsimile: (213) 443-3100
19
                                         *Attorneys for Canon U.S.A., Inc.*
20

21

22

23

24

25

26

27

28

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on April 24, 2018, counsel for Plaintiff and counsel for Defendant met and conferred regarding the relief sought by this Motion, and that Plaintiff's counsel indicated that Plaintiff is opposed to this relief.

*/s/ Jeffrey J. Ung*
Jeffrey J. Ung

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document including all of its attachments with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **April 24, 2018**. I further certify that service will be accomplished by the CM/ECF system and paper copies shall be served by first class mail, postage prepaid on all counsel who are not served through CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **April 24, 2018**.

*/s/ Jeffrey J. Ung*
Jeffrey J. Ung